CAREY RODRIGUEZ MILIAN GONYA, LLP
David P. Milian*
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone:   (305) 372-7474
Facsimile:   (305) 372-7475
Email:       dmilian@careyrodriguez.com

*pro hac vice motion forthcoming

*Counsel for Plaintiff Clayton P. Zellmer
and the Putative Class*

BOTTINI & BOTTINI, INC.
Albert Y. Chang (SBN 296065)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:   (858) 914-2002
Email:       achang@bottinilaw.com

*Local Counsel for Plaintiff Clayton P. Zellmer
and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CLAYTON P. ZELLMER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. _____<br><br>Class Action<br><br>**Class Action Complaint for Violation of the Illinois Biometric Information Privacy Act**<br><br>**Demand for Jury Trial** |

Class Action Complaint; Demand for Jury Trial

Plaintiff Clayton P. Zellmer ("Plaintiff" or "Plaintiff Zellmer"), individually and on behalf of all others similarly situated, brings this class action against defendant Facebook, Inc. ("Facebook"), alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Plaintiff makes these allegations based on personal knowledge as to himself, on the investigation of his counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery. Plaintiff demands a trial by jury.

## NATURE OF THE ACTION

1. Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Facebook in violating the BIPA by capturing, possessing, collecting, storing, receiving through trade, obtaining, and using the biometric identifiers[1] and biometric information[2] (referred to collectively at times as "biometrics") of Plaintiff and other similarly situated individuals, without their informed written consent.

2. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id*.

3. In recognition of these concerns over the security of individuals' biometrics — particularly in the City of Chicago, which was recently selected by major

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry," among others.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

Class Action Complaint; Demand for Jury Trial
- 1 -

national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias," 740 ILCS 14/5(b) — the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like Facebook may not obtain or possess an individual's biometrics unless it: (i) informs that person in writing that biometric identifiers or information will be collected or stored, *see* 740 ILCS 14/15(b); (ii) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, *see id.*; (iii) receives a written release from the person for the collection of his or her biometric identifiers or information, *see id.*; and (iv) publishes publically available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, *see* 740 ILCS 14/15(a).

4. In direct violation of each of the foregoing provisions of Section 15(a) and Section 15(b) of the BIPA, Facebook is actively collecting, storing, and using — without providing notice, obtaining informed written consent, or publishing data retention policies — the biometrics of its users and unwitting non-users like Plaintiff.

5. Specifically, Facebook has created, collected and stored over a billion "face templates" (or "face prints") — highly detailed geometric maps of the face — from over a billion individuals, millions of whom reside in the State of Illinois. Facebook creates these templates using sophisticated facial recognition technology that extracts and analyzes data from the points and contours of faces appearing in photos uploaded by their users. Each face template is unique to a particular individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

6. At all times relevant, Facebook has stated publicly on its website that "[w]e are able to suggest that your friend tag you in a picture **by scanning** and comparing your friend's pictures to information we've put together from the other photos you have been tagged in." According to the same website, this process is performed by "**facial**

1 **recognition software that uses an algorithm to calculate a unique number ('template') based on someone's facial features, like the distance between the eyes, nose and ears**."[3]

7. Plaintiff, who has never had a Facebook account, brings this action individually and on behalf of all others similarly situated to prevent Facebook from further violating the privacy rights of Illinois residents, and to recover statutory damages for Facebook's unauthorized collection, storage and use of unwitting non-users' biometrics in violation of the BIPA.

## PARTIES

8. Plaintiff Zellmer is, and has been at all relevant times, a resident and citizen of Illinois. Plaintiff Zellmer is not, and has never been, a Facebook user. Plaintiff Zellmer does not have, and has never had, a Facebook account.

9. With its over one billion users, Facebook operates the world's largest online social networking website. Facebook is a Delaware corporation with its headquarters and principal executive offices at 1601 Willow Road, Menlo Park, California 94025. Accordingly, Facebook is a citizen of the states of Delaware and California.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 740 ILCS 14/20 and the Class Action Fairness Act (28 U.S.C. § 1332(d)), because: (i) the proposed class of non-users of Facebook consist of well over 100 members; (ii) the parties are minimally diverse with respect to the proposed class, as the members of the proposed class, including Plaintiff, are citizens of a state different from Facebook's home states; and (iii) the aggregate amount in controversy with respect to the proposed class exceeds $5,000,000.00, exclusive of interests and costs.

---

[3] All emphases are added unless otherwise noted.

11. Facebook is subject to personal jurisdiction in California under California Code of Civil Procedure § 410.10 because Facebook owns and operates a business that is headquartered in California, and because it conducts substantial business throughout California.

12. Venue is proper in this District because Facebook resides in this District and is subject to personal jurisdiction in this District.

**INTRADISTRICT ASSIGNMENT**

13. Facebook maintains its principal executive offices in San Mateo County. This action shall thus be assigned to the San Francisco Division or Oakland Division of this District. Because a related case — *Gullen v. Facebook, Inc.*, No. 16-cv-0937-JD (N.D. Cal.) — is pending in the San Francisco Division of this District, before the Honorable James Donato, this action should be assigned to Judge Donato of the *San Francisco Division*.

**FACTUAL ALLEGATIONS**

**I.    Biometric Technology Implicates Consumer Privacy Concerns**

14. "Biometrics" refers to unique physical characteristics used to identify an individual. One of the most prevalent uses of biometrics is in facial recognition technology, which works by scanning an image for human faces, extracting facial feature data based on specific "biometric identifiers" (*i.e.*, details about the face's geometry as determined by facial points and contours), and comparing the resulting "face template" (or "faceprint") against the face templates stored in a "face template database." If a database match is found, an individual may be identified.

15. The use of facial recognition technology in the commercial context presents numerous consumer privacy concerns. During a 2012 hearing before the United States Senate Subcommittee on Privacy, Technology, and the Law, then-Senator Al Franken stated that "there is nothing inherently right or wrong with [facial recognition technology, but] if we do not stop and carefully consider the way we use [it],

it may also be abused in ways that could threaten basic aspects of our privacy and civil liberties."[4] Senator Franken noted, for example, that facial recognition technology could be "abused to not only identify protesters at political events and rallies, but to target them for selective jailing and prosecution."[5]

16. The Federal Trade Commission ("FTC") has raised similar concerns, and recently released a "Best Practices" guide for companies using facial recognition technology.[6] In the guide, the FTC underscores the importance of companies obtaining affirmative consent from consumers before extracting and collecting their biometric identifiers and biometric information from digital photographs.

17. As explained below, Facebook failed to obtain consent from unwitting non-users when it introduced its facial recognition technology. Not only do the actions of Facebook contravene the FTC guidelines, they also violate the statutory privacy rights of Illinois residents.

## II.   The BIPA

18. In 2008, Illinois enacted the BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. The BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers[7] or biometric information, unless it first:

---

[4] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary*, 112TH CONG. 1 (2012) (*available at* https://www.eff.org/files/filenode/jenniferlynch_eff-senate-testimony-face_recognition.pdf).

[5] *Id.*

[6] *Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, FEDERAL TRADE COMMISSION (Oct. 2012) (*available at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf).

[7] The BIPA's definition of "biometric identifier" expressly includes information collected about the geometry of the face (*i.e.*, facial data obtained through facial recognition technology). *See* 740 ILCS 14/10.

Class Action Complaint; Demand for Jury Trial
- 5 -

> (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15(b).

19. Section 15(a) of the BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

20. As alleged below, Facebook's practices of capturing, possessing, collecting, storing, receiving through trade, obtaining, and using unwitting non-users' biometric identifiers and information without informed written consent violate all three prongs of Section 15(b) of the BIPA. Facebook's failure to provide a publicly available written policy regarding its schedule and guidelines for the retention and permanent destruction of non-users' biometric information also constitutes a separate and independent violation of Section 15(a) of the BIPA.

### III.  **Facebook Violates the BIPA**

21. Facebook users upload approximately 300 million photos per day, making photographs a vital part of the Facebook experience.

22. Unbeknownst to the average consumer, and in direct violation of Section 15(b)(1) of the BIPA, Facebook's proprietary facial recognition technology scans every user-uploaded photo for faces, extracts geometric data relating to the unique points and contours of each face, and then uses that data to create and store a template of each face — all without ever directly informing anyone of this practice.

Class Action Complaint; Demand for Jury Trial
- 6 -

23. Facebook holds several patents covering its facial recognition technology that detail its process of scanning photos for biometric identifiers and obtaining face templates without obtaining informed written consent.

24. Facebook's scanning of face geometry works by comparing the face templates of individuals who appear in newly-uploaded photos with the facial templates already saved in Facebook's face database. Specifically, when a Facebook user uploads a new photo, Facebook's sophisticated facial recognition technology creates a scan of a face geometry template for each face depicted therein, without consideration for whether a particular face belongs to a Facebook user or unwitting non-user, and then compares each template against Facebook's face template database. If no match is found, the user is prompted to identify by name the person whose face is depicted, at which point the face template and corresponding name identification are saved in Facebook's face database. However, if a face template is generated that matches a face template already in Facebook's face database, then Facebook suggests that the user click on the name that matches the name already associated with that face.

25. These unique biometric identifiers are not only collected and used by Facebook to identify individuals by name, but also to recognize their gender, age, race and location. Accordingly, Facebook also collects "biometric information" from non-users. *See* 740 ILCS 14/10.

26. In direct violation of Section 15(b)(2) and Section 15(b)(3) of the BIPA, Facebook never informed Illinois non-users, such as Plaintiff, who were tagged by Facebook's users, of the specific purpose and length of term for which their biometric identifiers or information would be collected, stored and used, nor did Facebook obtain a written consent and release from any of these non-users as the statute expressly requires.

Class Action Complaint; Demand for Jury Trial
- 7 -

27. Also in direct violation of Section 15(a) of the BIPA, Facebook does not have written, publicly available policies identifying its retention schedules or guidelines for permanently destroying non-users' biometric identifiers or information.

### IV.   Plaintiff Zellmer's Experience

28. Plaintiff Zellmer does not have, and has never had, a Facebook account. Plaintiff Zellmer has never used Facebook's services.

29. On or about March 3, 2013, a Facebook user residing in Illinois uploaded to a personal account on Facebook, from a device assigned an Illinois-based IP address, at least one photograph depicting Plaintiff Zellmer. Plaintiff Zellmer resided in Illinois at the time the photograph was taken and uploaded to Facebook.

30. On or about April 15, 2014, a Facebook user residing in Illinois uploaded to a personal account on Facebook, from a device assigned an Illinois-based IP address, at least one photograph depicting Plaintiff Zellmer. Plaintiff Zellmer resided in Illinois at the time the photograph was taken and uploaded to Facebook.

31. On or about September 7, 2014, a Facebook user residing in Illinois uploaded to a personal account on Facebook, from a device assigned an Illinois-based IP address, at least one photograph depicting Plaintiff Zellmer. Plaintiff Zellmer resided in Illinois at the time the photograph was taken and uploaded to Facebook.

32. On or about November 28, 2015, a Facebook user residing in Illinois uploaded to a personal account on Facebook, from a device assigned an Illinois-based IP address, at least one photograph depicting Plaintiff Zellmer. Plaintiff Zellmer resided in Illinois at the time the photograph was taken and uploaded to Facebook.

33. On or about January 19, 2016, a Facebook user residing in Illinois uploaded to a personal account on Facebook, from a device assigned an Illinois-based IP address, at least one photograph depicting Plaintiff Zellmer. Plaintiff Zellmer resided in Illinois at the time the photograph was taken and uploaded to Facebook.

34. Plaintiff is informed and believes, and thereupon alleges, that Facebook users residing in Illinois have uploaded to personal pages on Facebook, from devices assigned Illinois-based IP addresses, numerous additional photographs depicting Plaintiff Zellmer over the past several years, and that such photographs were both taken and uploaded to Facebook while Plaintiff Zellmer resided in Illinois.

35. Upon upload to Facebook of each of the aforementioned photographs of Plaintiff Zellmer, Facebook automatically scanned and analyzed Plaintiff Zellmer's face, extracted his biometric identifiers (such as geometric data relating to the unique contours of his face geometry and the distances between his eyes, nose and ears), and then used those biometric identifiers to create a digitized template of his face.

36. Facebook then prompted the Facebook users who uploaded these photos to match a name to Plaintiff Zellmer's face, at which point the user matched the name "Clayton Zellmer" to Plaintiff Zellmer's face in the photographs. Facebook violates the statute with respect to Plaintiff Zellmer not solely by "prompting" users to match names with faces, but by capturing, possessing, collecting, storing, receiving through trade, obtaining or using Plaintiff Zellmer's biometric identifiers.

37. The face template created from Plaintiff Zellmer's biometric identifiers was also used by Facebook to recognize Plaintiff Zellmer's gender, age, race and location.

38. Plaintiff Zellmer never consented, agreed or gave permission — written or otherwise — to Facebook for the capturing, possessing, collecting, storing, receiving through trade, obtaining, or using of the biometric identifiers or biometric information associated with Plaintiff Zellmer's face template.

39. Further, Facebook never provided Plaintiff Zellmer with nor did he ever sign a written release allowing Facebook to capture, possess, collect, store, receive through trade, obtain or use biometric identifiers or biometric information associated with Plaintiff Zellmer's face template. Further, Facebook never provided Plaintiff

Class Action Complaint; Demand for Jury Trial
- 9 -

Zellmer's legally authorized representative with nor did Plaintiff Zellmer's legally authorized representative ever sign a written release allowing Facebook to capture, possess, collect, store, receive through trade, obtain or use biometric identifiers or biometric information associated with Plaintiff Zellmer's face template.

40. Likewise, Facebook never provided Plaintiff Zellmer with an opportunity to prohibit or prevent the capture, possession, collection, storage, receiving through trade, obtaining, or use of the biometric identifiers associated with Plaintiff Zellmer's face template.

41. Nevertheless, when Facebook users uploaded photos of Plaintiff Zellmer, Facebook located Plaintiff Zellmer's face in each such photo, scanned Plaintiff's facial geometry, and created a unique face template corresponding to Plaintiff Zellmer, all in direct violation of the BIPA.

## CLASS ALLEGATIONS

42. **Class Definition:** Plaintiff brings this action on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals who have never subscribed to Facebook.com or any other Facebook, Inc. service and, while residing in Illinois, whose face was depicted in a photograph uploaded to Facebook.com from a device assigned an Illinois-based internet protocol address at any point in time between August 31, 2010 and the present.

The following are excluded from the Class: (i) any Judge presiding over this action and members of his or her family; (ii) Facebook, Facebook's subsidiaries, parents, successors, predecessors, and any entity in which Facebook or its parent has a controlling interest (as well as current or former employees, officers and directors); (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Facebook's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

43. **Numerosity:** The number of persons within the Class is substantial and is believed to amount to thousands of people. It is, therefore, impractical to join each

Class Action Complaint; Demand for Jury Trial
- 10 -

member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

44. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

    a. whether Facebook collected or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information through photos uploaded to Facebook's site;

    b. whether Facebook properly informed Plaintiff and the Class that it collected, used, and stored their biometric identifiers or biometric information;

    c. whether Facebook obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometrics identifiers or biometric information;

    d. whether Facebook developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometrics information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

    e. whether Facebook used Plaintiff's and the Class's biometric identifiers or biometric information to identify them; and

    f. whether Facebook's violations of the BIPA were committed intentionally, recklessly, or negligently.

45. **Adequate Representation:** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

46. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the BIPA.

### SOLE CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq.*
### (On Behalf of Plaintiff and the Class)

47. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48. The BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information ...." 740 ILCS 14/15(b).

49. Facebook is a "private entity' under the BIPA. *See* 740 ILCS 14/10.

50. Plaintiff and the Class members are individuals who had their "biometric identifiers" collected and stored by Facebook's facial recognition software (in the form of their facial geometries extracted from uploaded digital photographs). *See id*.

51. Plaintiff and the Class members are individuals who had their "biometric information" collected by Facebook (in the form of their gender, age, race and location) through Facebook's collection and use of their "biometric identifiers."

52. Facebook systematically and automatically collected, used, and stored Plaintiff's and the Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

53. Facebook failed to properly inform Plaintiff and the Class in writing that their biometric identifiers and/or biometric information was being collected, captured, stored or otherwise obtained, nor did Facebook inform Plaintiff and the Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2).

54. In addition, Facebook does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric

information of Plaintiff and the Class members, as required by the BIPA. *See* 740 ILCS 14/15(a).

55. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Facebook violated the right of Plaintiff and each Class member to keep private these biometric identifiers and biometric information and prevented Plaintiff and the Class from exercising their rights to refuse Defendant access to their biometric data, as set forth in the BIPA, 740 ILCS 14/1, *et seq*. In this way, Facebook has harmed Plaintiff and Class members by invading and violating Plaintiff's and Class members' rights to privacy.

56. On behalf of himself and the proposed Class members, Plaintiff seeks: (i) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Facebook to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (ii) statutory damages of $5,000 for the intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 pursuant to 740 ILCS 14/20(1) if the Court finds that Facebook's violations were negligent; and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Zellmer, on behalf of himself and the proposed Class, respectfully requests that this Court enter an order and judgment:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B. Declaring that Facebook's actions, as set forth above, violate the BIPA, 740 ILCS 14/1, *et seq*.;

C. Awarding statutory damages of $5,000 for each and every intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 pursuant to 740 ILCS 14/20(1) if the Court finds that Facebook's violations were negligent;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an order requiring Facebook to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 27, 2018

Respectfully submitted,

BOTTINI & BOTTINI, INC.
Albert Y. Chang (SBN 296065)

s/ Albert Y. Chang
Albert Y. Chang

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:     (858) 914-2001
Facsimile:      (858) 914-2002

*Local Counsel for Plaintiff Clayton P. Zellmer and the Putative Class*

CAREY RODRIGUEZ MILIAN GONYA, LLP
David P. Milian
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone:     (305) 372-7474
Facsimile:      (305) 372-7475

*Counsel for Plaintiff Clayton P. Zellmer and the Putative Class*