MAYER BROWN LLP
John Nadolenco (SBN 181128)
350 South Grand Avenue
25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
jnadolenco@mayerbrown.com

Lauren R. Goldman (*pro hac vice*)
Michael E. Rayfield
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2647
lrgoldman@mayerbrown.com
mrayfield@mayerbrown.com
*Counsel for Defendant Facebook, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CLAYTON P. ZELLMER, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>                Defendant. | **DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION AND UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM**<br><br>Case No.: 3:18-CV-01880-JD<br><br>Date:  September 13, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom 11<br><br>Hon. James Donato<br><br>*[Proposed Order and Declaration of John Nadolenco filed concurrently herewith]* |

## **NOTICE OF MOTION & MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on September 13, 2018, at 10:00 a.m., before the Honorable James Donato, defendant Facebook, Inc. will and hereby does move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Facebook's motion is based on this notice of motion and motion; the memorandum of points and authorities that follows; the pleadings, papers, and documents on file in this action; any reply memorandum that Facebook may file; and such other evidence and argument presented to the Court at or prior to the hearing in this matter.  Facebook does not request oral argument on this motion.

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

    A.    Facebook's Tag Suggestions Feature............................................................................ 2

    B.    The Illinois Biometric Information Privacy Act ......................................................... 3

    C.    Mr. Zellmer's Claim .................................................................................................... 3

ARGUMENT ................................................................................................................................ 4

I.    MR. ZELLMER'S CLAIMS SHOULD BE DISMISSED FOR LACK OF
SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1) ................................... 4

    A.    Mr. Zellmer Has Not Alleged A Concrete Interest Protected By BIPA ................ 4

    B.    Mr. Zellmer Has Not Alleged Any Real-World Harm ......................................... 5

II.    MR. ZELLMER'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM ...................................................................................................... 6

    A.    Mr. Zellmer Does Not Allege That He Was "Aggrieved" Within The
Meaning Of BIPA's Private Right Of Action...................................................... 6

    B.    Mr. Zellmer Has Failed To State A Claim Because "Photographs" and
"Information Derived From" Photographs Are Expressly Exempted From
Regulation Under BIPA ....................................................................................... 8

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bassett v. ABM Parking Serv., Inc.*,
 883 F.3d 776 (9th Cir. 2018) ...................................................................................................4

*Eichenberger v. ESPN, Inc.*,
 876 F.3d 979 (9th Cir. 2017) ...................................................................................................5

*Emery v. Clark*,
 604 F.3d 1102 (9th Cir. 2010) .................................................................................................6

*In re Facebook Biometric Info. Privacy Litig.*,
 185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...............................................................................1, 8

*In re Facebook Biometric Info. Privacy Litig.*,
 2018 WL 1794295 (N.D. Cal. Apr. 16, 2018) .....................................................................1, 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
 528 U.S. 167 (2000) .................................................................................................................4

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .................................................................................................................4

*McCollough v. Smarte Carte, Inc.*,
 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) ............................................................................5

*Patel v. Facebook Inc.*,
 290 F. Supp. 3d 948 (N.D. Cal. 2018) .....................................................................................1

*Robins v. Spokeo, Inc.*,
 867 F.3d 1108 (9th Cir. 2017) .................................................................................................4

*Rosenbach v. Six Flags Entm't Corp.*,
 __ N.E.3d __, 2017 IL App (2d) 170317, (Dec. 21, 2017) ..................................................6, 7

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) .........................................................................................................1, 4

*Strautins v. Trustwave Holdings, Inc.*,
 27 F. Supp. 3d 871 (N.D. Ill. 2014) .........................................................................................5

*Syed v. M-I, LLC*,
 853 F.3d 492 (9th Cir. 2017) ................................................................................................5, 6

Case 3:18-cv-01880-JD   Document 22   Filed 07/02/18   Page 5 of 14

*Van Patten v. Vertical Fitness Group, LLC*,
   847 F.3d 1037 (9th Cir. 2017) .......................................................................................5, 6

*Vigil v. Take-Two Interactive Software, Inc.*,
   235 F. Supp. 3d 499 (S.D.N.Y. 2017), *aff'd in part, rev'd in part on other grounds*, 717 F. App'x 12 (2d Cir. 2017) ...................................................................5

*Warth v. Seldin*,
   422 U.S. 490 (1975).............................................................................................................4

**Statutes**

740 ILCS 14/10................................................................................................................8, 9

740 ILCS 14/15(b) ...............................................................................................................3

740 ILCS 14/20................................................................................................................3, 6

**Other Authorities**

Fed. R Civ. P. 12(b)(1)......................................................................................................1, 4

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1

Jeremiah A. Armstrong, *The Digital Era of Photography Requires Streamlined Licensing and Rights Management*, 47 SANTA CLARA L. REV. 785, 785 (2007) ......................8

WEBSTER'S DICTIONARY 373 (2008 ed.) (Ex. 1) ...............................................................8

iii

# INTRODUCTION

Plaintiff Clayton P. Zellmer challenges Facebook's use of facial-recognition technology in connection with a product feature, called Tag Suggestions, that enables people who use Facebook to more easily tag their Facebook friends in the photos that they upload to the service. Mr. Zellmer alleges that he does *not* have a Facebook account. But he alleges that third parties uploaded pictures of him to Facebook and labeled the pictures with his name, and that Facebook violated the Illinois Biometric Information Privacy Act ("BIPA") by applying facial-recognition technology to these photos without providing him with adequate notice and obtaining his consent. This Court has already expressed deep skepticism about nearly identical claims brought by an individual without a Facebook account, noting that such claims are "patently unreasonable" because it would be impossible for Facebook to give notice to, and obtain consent from, non-users for whom no template is created.

Even assuming the truth of plaintiff's allegations for purposes of this motion, the complaint should be dismissed for three separate reasons.[1] First, plaintiff's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, because he has not alleged a "concrete injury" sufficient to establish Article III standing under the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Second, plaintiff's complaint should also be dismissed under Rule 12(b)(6) for failure to state a claim because he has not alleged that he was "aggrieved" as required by BIPA's private right of action. Third, the complaint should be dismissed because BIPA excludes "photographs" and "information derived from" photos.

---

[1] Facebook acknowledges that this Court has previously rejected similar arguments in different cases involving Tag Suggestions and BIPA. *See Patel v. Facebook Inc.*, 290 F. Supp. 3d 948 (N.D. Cal. 2018) (Article III standing); *In re Facebook Biometric Info. Privacy Litig.*, 2018 WL 1794295, at *6-8 (N.D. Cal. Apr. 16, 2018) (BIPA's "aggrieved" provision); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1170-72 (N.D. Cal. 2016) (BIPA's photo exception). Because the Court is already familiar with the arguments in this motion, Facebook has made them in a summary fashion here.

# BACKGROUND

### A. Facebook's Tag Suggestions Feature

Over 2.2 billion people worldwide use Facebook to connect with their friends and family and share a wide variety of content, including photos, with them. Facebook has long enabled people to make sharing photos a more social and personal experience through "tagging." Tagging allows people to sort their uploaded photos not only by the date when they were taken or uploaded, but also by the names of the people in them. If the person who is tagged uses Facebook, the tag will include a link to that person's Facebook account; if the person who is tagged is a non-user, the tag will consist of text only. The photo (and any tags) are visible only to the audience determined by the person who uploads it.

In 2010, Facebook started rolling out a feature called "Tag Suggestions" to make it easier for people to tag their Facebook friends in photos. Facebook uses facial-recognition technology to analyze photos that are uploaded to its service by people with registered accounts, and then uses the information derived from the photos to make suggestions about which Facebook friends to tag. Compl. (Dkt. 1) ¶¶ 22, 35. Plaintiff alleges that the information derived from these photos is then saved by Facebook as a "template." *Id.* ¶¶ 5, 14, 22, 35.

The foregoing description of Facebook's Tag Suggestions feature is drawn from the complaint. But in other important respects, the complaint's description of this feature, and of tagging more generally, is materially incorrect or incomplete. Most notably, Tag Suggestions does not apply to people without Facebook accounts. If a person who is tagged in a photo on Facebook does not have a Facebook account, Facebook does not—contrary to paragraph 24 of the complaint—save a "face template" and "corresponding name identification" in its "database." Furthermore, Facebook explains how the Tag Suggestions feature works in its Data Policy, and provides a setting that enables users to turn the feature off at any time. If a user turns off the feature, any template that may have been created for the user is deleted. These factual inaccuracies in the complaint make no difference for purposes of this motion, however, because even as pleaded Mr. Zellmer's claim fails.

2
FACEBOOK'S MOTION TO DISMISS, CASE NO. 3:18-CV-01880-JD

### B. The Illinois Biometric Information Privacy Act

BIPA regulates the collection and storage of "biometric identifiers" and "biometric information." "'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.  The definition excludes "writing samples, written signatures, *photographs*, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color." *Id.* (emphasis added). "Biometric information," is defined as information "based on an individual's biometric identifier" that is "used to identify an individual." *Id.* "Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers"—such as photographs. *Id*.

Private entities may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" without first (1) informing the individual in writing that "a biometric identifier or biometric information is being collected or stored" and for what "specific purpose and length of term"; and (2) obtaining a "written release" from the individual. 740 ILCS 14/15(b).  In addition, a "private entity in possession of biometric identifiers or biometric information" is required to develop a publicly available written policy regarding the retention and destruction of biometric identifiers and biometric information. *Id.* 14/15(a).  BIPA provides a private right of action for "[a]ny person aggrieved by a violation of this Act." *Id.* 14/20.

### C. Mr. Zellmer's Claim

Mr. Zellmer alleges that unidentified Facebook users uploaded photos to Facebook that included his likeness. Compl. ¶¶ 29-34. He claims that Facebook extracted "geometric data" about his face from these photos, and created and saved a template containing that data. *Id.* ¶¶ 24, 35.  He seeks to represent a putative class of "[a]ll individuals who have never subscribed to Facebook.com or any other Facebook, Inc. service and, while residing in Illinois, whose face was depicted in a photograph uploaded to Facebook.com from a device assigned an Illinois-based internet protocol address at any point in time between August 31, 2010 and the

present." *Id.* ¶ 42.  Mr. Zellmer alleges that Facebook violated BIPA by failing to make the requisite disclosures to, and obtain adequate releases from, these individuals.  *Id.* ¶¶ 47-56.

## ARGUMENT

### I. MR. ZELLMER'S CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1).

In order to satisfy the "irreducible constitutional minimum" of Article III standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), a plaintiff must show that he "has suffered an 'injury in fact.'"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000).  Where, as here, a case is at the pleading stage, the plaintiff must "clearly" "allege facts" satisfying this requirement.  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).  "Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo*, 136 S. Ct. at 1549.  Although certain "intangible injuries" can qualify as injuries in fact, any such injury must be "*de facto*"—that is, "real" rather than "abstract," " conjectural, or hypothetical."  *Id.* at 1548-50.

The Ninth Circuit has held that under *Spokeo*, a plaintiff must satisfy two requirements to establish standing based on an alleged statutory violation: he must show (1) that "the statutory provisions at issue were established to protect [ ] concrete interests (as opposed to purely procedural rights)"; and (2) that "the specific procedural violations alleged in th[e] case actually harm, or present a material risk of harm, to such interests."  *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017).  Mr. Zellmer has alleged neither.

### A. Mr. Zellmer Has Not Alleged A Concrete Interest Protected By BIPA.

BIPA regulates two primary categories of conduct: (a) the collection, analysis, and retention of data about a person; and (b) the dissemination or sale of that information to third parties.  Mr. Zellmer relies solely on the first set of regulations:  the sections of BIPA regulating the mere collection and retention of biometric data.  These provisions do not protect concrete interests that have traditionally served as a basis for suit; accordingly, a bare violation of them, without a showing of actual harm flowing from that violation, cannot support Article III standing.  *See Bassett v. ABM Parking Serv., Inc.*, 883 F.3d 776, 783 (9th Cir. 2018) (declining

to find standing where "private information" is collected by the defendant but "not disclosed"); *McCollough v. Smarte Carte, Inc.*, 2016 WL 4077108, at *4 (N.D. Ill. Aug. 1, 2016) (collection of plaintiff's fingerprints in violation of BIPA's notice-and-consent requirements did not support Article III standing; plaintiff "ha[d] alleged [only] the sort of bare procedural violation that cannot satisfy Article III"); *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 518-19 (S.D.N.Y. 2017), *aff'd in part, rev'd in part on other grounds*, 717 F. App'x 12 (2d Cir. 2017); *compare Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (dissemination of personally identifiable information can establish standing).

### B.  Mr. Zellmer Has Not Alleged Any Real-World Harm.

Mr. Zellmer also does not claim real-world harm of *any* kind.

In *Robins*, the Ninth Circuit emphasized that, in addition to alleging that the defendant had disclosed inaccurate information about him (*i.e.,* the statutory violation), the plaintiff had "specifically alleged" that he had suffered multiple real-world harms: he was "out of work and looking for a job," the defendant had "diminished [his] employment prospects," and it had caused him to suffer "anxiety, stress, concern, and/or worry."  867 F.3d at 1117.  In other words, the plaintiff alleged a statutory violation *plus* a harmful result.

The same was true in the other post-*Spokeo* Ninth Circuit cases that have found Article III standing.  In *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), the court held that plaintiff had "allege[d] more than a bare procedural violation" of FCRA because he claimed that he "was *confused* by the inclusion of [a] liability waiver with [a job application] and *would not have signed it* had it contained a sufficiently clear disclosure." *Id.* at 499 (emphases added).  And in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), the plaintiff alleged a violation of a statute that caused him "*actual harm*" by "distur[bing] the [plaintiff's] solitude." *Id.* at 1043 (emphasis added).

Mr. Zellmer makes no such allegations.  He claims in a wholly conclusory fashion that Facebook "violated" his "privacy rights." Compl. ¶¶ 7, 17, 55.  But "rights' are not a type of injury by itself"; "[he] must also allege that [he] has been injured by the violation." *Strautins v.*

*Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 882 (N.D. Ill. 2014).  Unlike in *Robins*, *Syed*, and *Van Patten*, Mr. Zellmer does not allege that Facebook's mere collection of his biometric data *harmed* his "privacy" interests—either by causing him emotional harm or by materially affecting his reputation, livelihood, or relationships.  His vague incantation of "privacy rights" is just a restatement of his claim that BIPA was violated.

## II. MR. ZELLMER'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A. Mr. Zellmer Does Not Allege That He Was "Aggrieved" Within The Meaning Of BIPA's Private Right Of Action.

The "aggrieved" provision in BIPA's private right of action requires a plaintiff to prove that he suffered an injury *beyond* the alleged collection of his biometric data without notice and consent.  Mr. Zellmer has not alleged any such injury; he has therefore failed to satisfy BIPA's private right of action.

BIPA provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action . . . against an offending party." 740 ILCS 14/20.  The Illinois Appellate Court has held that this provision requires a plaintiff to prove more than a violation of BIPA's notice-and-consent provisions: the plaintiff must prove an "adverse effect or harm" flowing from that violation.  *Rosenbach v. Six Flags Entm't Corp.*, __ N.E.3d __, 2017 IL App (2d) 170317, ¶ 21 (Dec. 21, 2017).[2]  This decision is binding on the Court absent "'convincing evidence' that the state's highest court would reach a different conclusion." *Emery v. Clark*, 604 F.3d 1102, 1118 (9th Cir. 2010).

In *Rosenbach*, Stacy Rosenbach alleged that her minor son went to the defendants' theme park without her and purchased a season pass, and that "his thumb was scanned into the Six Flags 'biometric data capture system.'" *Rosenbach*, 2017 IL App (2d) 170317, ¶ 7.  "Upon Alexander's return home, plaintiff asked him for a booklet or paperwork that accompanied the season pass, but she learned that there was none." *Id.* ¶ 8.  "[N]either she nor Alexander was informed in writing of the specific purpose and length of term for which Alexander's thumbprint

---

[2]  The Supreme Court of Illinois recently allowed the *Rosenbach* plaintiff's petition for leave to appeal. 2018 WL 2452249, at *1 (Ill. May 30, 2018).

would be collected, stored, and used and . . . neither she nor Alexander signed any written release regarding the thumbprint." *Id.* Ms. Rosenbach contended that the defendants violated BIPA by failing to provide her with notice or obtain her consent; that her son's "right to privacy" was "adversely affected"; and that "had she known of defendants' conduct, she would not have allowed [him] to purchase the pass." *Id.* ¶¶ 1, 20. The trial court certified the question of "whether an individual is an aggrieved person under section 20 of [BIPA] . . . when *the only injury he or she alleges* is a violation of [BIPA] by a private entity that *collected his or her biometric identifiers* and/or biometric information without providing him or her the disclosures and obtaining the written consent required by [BIPA]" (*id.* ¶ 15 (emphases added))—*i.e.*, whether a violation of the statute's notice-and-consent provisions, standing alone, could support a claim.

The Appellate Court answered unanimously "in the negative." *Id.* ¶ 30. It held that "[i]f a person alleges only a technical violation of the Act *without alleging any injury or adverse effect*, then he or she is not aggrieved and may not recover." *Id.* ¶ 28 (emphasis added). "[I]f the Illinois legislature intended" otherwise, "it could have omitted the word 'aggrieved' and stated that every violation was actionable." *Id.* ¶ 23   Ms. Rosenbach's contention that her child's "right to privacy . . . ha[d] been adversely affected" was insufficient, because she did not claim any resulting "actual injury, adverse effect, or harm." *Id.* ¶ 20.

As discussed above, Mr. Zellmer does not allege any injury arising out of the alleged BIPA violation. He therefore cannot satisfy BIPA's private right of action. And it is clear why Mr. Zellmer cannot allege any harm: Facebook has no way of identifying (much less providing notice to, or obtaining consent from) non-users who merely appear in photographs uploaded to the service. Facebook keeps no records of such people. Nor could it, because Facebook has no idea who they are; these individuals have never interacted with Facebook or provided any identifying information. This means that no data about Mr. Zellmer could possibly be shared with third parties or otherwise misused. And he cannot claim to have been *harmed* by an alleged failure to give notice that would have been *impossible*.

**B.   Mr. Zellmer Has Failed To State A Claim Because "Photographs" and "Information Derived From" Photographs Are Expressly Exempted From Regulation Under BIPA.**

Mr. Zellmer recognizes that his claim rests entirely on photos that people voluntarily upload to Facebook. *See, e.g.*, Compl. ¶¶ 5, 22, 24, 29-34, 36, 41.  That fact bars his claim: BIPA expressly excludes from its coverage both "photographs" and "information derived from" photographs.  740 ILCS 14/10.

Ignoring these clear exclusions, Mr. Zellmer alleges that "information collected about the geometry of the face"—no matter the source—is a "scan of . . . face geometry" and thus falls within the definition of "biometric identifier."  Compl. ¶ 18 n.7.  That argument ignores the structure of the statute: liability attaches under BIPA only if the source of the information qualifies as a "biometric identifier."  740 ILCS 14/10.  Photos do not qualify.

Nor can the application of facial-recognition technology transform a photograph into a biometric identifier.  BIPA has a separate section that specifically addresses the application of technology to data that a party has collected: the provision on "biometric information," which is defined as information "based on an individual's biometric identifier" that is "used to identify an individual."  *Id.*  If data "extracted" from the analysis of photographs (Compl. ¶¶ 35, 50) were covered by BIPA, it would be regulated under the rubric of "biometric information."  But it is not:  The statute explicitly excludes from the definition of "biometric information" all "information derived from" the "items or procedures" that are excluded from the meaning of "biometric identifier," including "photographs."  740 ILCS 14/10.[3]

---

[3] Facebook acknowledges that the Court held in *Facebook Biometric* that the word "photographs" in BIPA "is better understood to mean paper prints of photographs, not digitized images stored as a computer file and uploaded to the Internet."  *Facebook Biometric*, 185 F. Supp. 3d at 1171.  Facebook respectfully requests that the Court reconsider this decision.  BIPA does not distinguish between paper and digital photos.  And when BIPA was passed in 2008, digital photography was the norm:  As a 2007 article explains, "[d]igital photography entered the mainstream of consumer consciousness soon after the start of the new century"; "four in five cameras sold in 2005 were digital."  Jeremiah A. Armstrong, *The Digital Era of Photography Requires Streamlined Licensing and Rights Management*, 47 SANTA CLARA L. REV. 785, 785 (2007); *see also* WEBSTER'S DICTIONARY 373 (2008 ed.) (Ex. 1) ("photography" means "the art or process of producing images on a sensitive surface (as film or a CCD chip [a form of technology commonly used in digital imaging])").

Mr. Zellmer also claims that Facebook collected his "biometric information" "in the form of [his] gender, age, race and location." Compl. ¶ 51. This claim fails for the same reason: Mr. Zellmer alleges that Facebook collected this alleged "biometric information" from photographs (Compl. ¶¶ 5, 22, 24, 29-34, 36, 41), but the biometric information provision expressly excludes information derived from photographs. 740 ILCS 14/10.

## CONCLUSION

The complaint should be dismissed with prejudice.

Dated: July 2, 2018

MAYER BROWN LLP

By: */s/ John Nadolenco*
    John Nadolenco
    Lauren R. Goldman
    Michael E. Rayfield

*Counsel for Defendant Facebook, Inc.*